UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARLENA CROSBY,

    Plaintiff,

vs.

SEQUELCARE OF FLORIDA, LLC,

    Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Marlena Crosby (hereinafter referred to as "Plaintiff"), by through her undersigned counsel, sues the Defendant, SequelCare of Florida, LLC, (hereinafter referred to as "Defendant") and alleges as follows.

## JURISDICTION AND VENUE

1. This is an action for damages and the Court has jurisdiction in accordance with 28 U.S.C. § 1331 because this civil action arises under the Constitution, laws, or treaties of the United States.

2. Venue lies within the United States District Court for the Middle District of Florida, Tampa Division, in accordance with 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this claim occurred in this judicial district.

## PARTIES

3. At all times material herein, Plaintiff resided in either Pinellas County, Florida or Hillsborough County, Florida.

4. At all times material herein, Defendant was and is a Florida limited liability company, authorized to and doing business in Pinellas County, Florida.

5. Defendant is an "employer," as defined by the laws under which this action is brought.

## FACTUAL ALLEGATIONS

6. According to its website, SequelCare provides mental health and Children's Targeted Case Management services for approximately 1,000 children and families in Florida. Additionally, SequelCare provides therapeutic foster homes for children in the foster care system in the St. Petersburg and surrounding areas.

7. SequelCare's predecessor, Gift of Life Communities, LLC hired Crosby in 1994. SequelCare purchased Gift of Life in 2007, and retained Crosby. By 2022, Crosby was working for SequelCare as its Specialized Therapeutic Foster Care (STFC) Operations Manager.

8. As the STFC Operations Manager, Crosby managed SequelCare's contract with the Florida Department of Children and Families and oversaw staff members responsible for licensing foster homes for the children that SequelCare

placed.

9. In or around October 2021, SequelCare hired Ms. Shardee Tripp to serve as an Executive Director. At that time, Crosby reported to both Tripp and Karen Tucker, SequelCare's Community Based Services Program Director. Tucker resigned on or about March 11, 2022, after which Crosby reported directly to Tripp.

10. In January 2022, Crosby learned that Tripp planned to terminate the contract for Dr. Shah, the psychiatrist that provided the psychiatric and medication management services to the children that SequelCare placed in foster care. And, Crosby learned, rather than replacing Dr. Shah with another psychiatrist, Tripp planned to contract with Mr. Kevin Williams, P.A., a physician's assistant ("PA") to provide those services.

11. Crosby was concerned because she believed that Medicaid guidelines and payment rules required SequelCare to provide the children it placed in foster care with the services of a psychiatrist.

12. Nevertheless, and despite Crosby's concerns, Tripp moved forward with her plan and terminated Dr. Shah. Following Dr. Shah's termination, SequelCare provided the enrolled foster children treatment through a PA rather than through a psychiatrist.

13. Concerned with what she believed were improper and illegal

Medicaid practices, Crosby contacted Mr. John Stupak, the former Chief Executive Officer of SequelCare and a current board member for Vivant, SequelCare's parent company.

14. Stupak encouraged Crosby to share her concerns with SequelCare's internal compliance department. And he assured her that the company could not retaliate against for her for raising those concerns.

15. Accordingly, in February 2022, Crosby contacted SequelCare's internal compliance department and raised concerns about SequelCare's compliance with certain Medicaid obligations. Specifically, Crosby objected to SequelCare's failure to provide the children enrolled in foster care with the services of a licensed psychiatrist.

16. Shortly after Crosby raised her concerns about SequelCare's Medicaid compliance, Tripp began to retaliate against Crosby, criticizing her work and assigning new work duties that materially altered the terms and conditions of Crosby's employment.

17. For example, Tripp notified her that going forward she would have to perform an in-home visit for each of the foster children enrolled in the program. This would require Crosby to spend a great deal of time out of the office and drastically reduce the time that Crosby had available to complete her other duties. This created a particular challenge because Crosby was also covering the Clinical

Manager duties as that position that had remained vacant since November 2021.

18. On April 8, 2022, SequelCare terminated Crosby's employment, stating that they were downsizing and no longer had a need for her position.

## COUNT I
## FALSE CLAIMS ACT WHISTLEBLOWER

19. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in paragraphs 1 through 18.

20. Plaintiff took lawful actions to prevent Defendant from submitting false claims to the United States. Specifically, on several occasions Plaintiff objected to Defendant's violations of Medicaid requirements that she reasonably believed would have resulted in the submission of false claims.

21. Knowing of Plaintiff's complaints about these improper Medicaid billing practices, Defendant took retaliatory actions and terminated Plaintiff's employment.

**WHEREFORE,** Plaintiff demands judgment against the Defendant for all damages and relief available under the federal law including two times back pay; interest; reinstatement; all available compensatory damages, including those for emotional pain and suffering; attorneys' fees, costs, expenses; and all other relief that this Court deems just and proper.

## COUNT II
## FLORIDA'S PRIVATE WHISTLEBLOWER ACT

22. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in paragraphs 1 through 18.

23. This is an action for damages pursuant to Florida's Private Whistleblower's Act, Section 448.102, *Florida Statutes.*

24. Pursuant to Section 448.102, *Florida Statutes,* an employer may not take any retaliatory personnel action against an employee because the employee has objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation.

25. In contravention of said statute, Defendant discharged Plaintiff in direct retaliation for objecting to and/or refusing to participate in policies, practices and activities that were violations of laws, rules and regulations.

26. As a result of Defendant's unlawful acts as above-described, Plaintiff has and will continue to incur attorneys' fees, which are recoverable under Section 448.104, *Florida Statutes*.

**WHEREFORE,** Plaintiff demands judgment against the Defendant for all damages and relief available under the applicable law including compensation for lost wages, benefits, and other renumeration; interest; emotional pain and suffering, humiliation, and any other compensatory damages legally permitted;

6

reinstatement, attorneys' fees, costs, expenses, and all other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

27. Plaintiff requests a jury trial on all issues so triable.

Dated: June 30, 2022

        **FLORIN, GRAY, BOUZAS, OWENS, LLC**

        */s/ Scott L. Terry*
        **SCOTT L. TERRY, ESQUIRE**
        Florida Bar No.: 77105
        sterry@fgbolaw.com
        **WOLFGANG M. FLORIN, ESQUIRE**
        Florida Bar No.907804
        Primary: wolfgang@fgbolaw.com
        16524 Pointe Village Drive, Suite 100
        Lutz, FL 33558
        Telephone (727) 254-5255
        Facsimile (727) 483-7942
        Attorneys for Plaintiff